UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN FERRER, ROY HENRY, GERALD
JAMES, KHALID JOHNSON, ANTHONY
LOPEZ, ROSARITO QUEZADA, JUANA
QUEZADA, NICHOLAS RIVERA, AMANDA
SIMMONS, WAIMAN SIM, EUGENIA ST. HILL,
WARREN TUCKER, and AQUILES VARGAS, *on
behalf of themselves and all others similarly
situated*,

                        Plaintiffs,

   -against-

CITIGROUP GLOBAL MARKETS, INC. and
MORGAN STANLEY-SMITH BARNEY,

                        Defendants.

**MEMORANDUM & ORDER
09-CV-5095 (NGG) (JMA)**

------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs bring this action against Citigroup Global Markets, Inc. ("Citigroup" or "Citi") and Morgan Stanley-Smith Barney ("MSSB") under the federal Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.*, and the New York State Worker Adjustment and Retraining Notification ("New York WARN") Act, N.Y. Labor Law § 860 *et seq.* (Compl. (Docket Entry # 1) ¶¶ 1-2.) Plaintiffs, former employees of MSSB's Business Document Services Department ("BDS"), allege that Defendants violated the federal and state WARN Acts when they terminated Plaintiffs' employment without providing them with statutorily required notice. (Id. ¶¶ 70-71.) Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Def. Mot. (Docket Entry # 23).) The court grants Defendants' motion as to Citigroup and denies the motion as to MSSB, as set forth below.

1

## I. BACKGROUND

Plaintiffs are former employees of MSSB who worked at the BDS facility in Brooklyn, New York. (Compl. ¶ 3.) Until 2009, BDS provided in-house printing and document services to MSSB. (See id. ¶¶ 4-5.) At some time prior to October 2009, MSSB entered into an agreement with Broadridge Financial Solutions, Inc. ("Broadridge") to outsource the work performed by BDS. (Id. ¶¶ 63-66.) This agreement was part of a business decision by MSSB to stop providing document support services internally. (Id. ¶ 66.) Consequently, on October 12, 2009, MSSB terminated Plaintiffs. (Id. ¶ 63.) At least 179 individuals, comprising approximately 88% of all employees at the BDS facility, were affected. (Id. ¶¶ 1, 54.)

The federal WARN Act requires covered employers to provide employees with sixty days' notice prior to a plant closing or mass layoff that causes an employment loss within the meaning of the statute, 29 U.S.C. § 2102(a); the New York WARN Act requires that employers provide ninety days' notice, N.Y. Labor Law § 860-b(1). MSSB did not provide Plaintiffs with WARN notice in advance of their termination. (Compl. ¶ 72.)

MSSB did, however, advise Plaintiffs that they would be offered employment at Broadridge, contingent upon passing pre-employment screening. (Id. ¶¶ 64, 67.) Although Plaintiffs acknowledge that they were offered an opportunity to work at Broadridge following the sale of BDS, they claim that Defendants' failure to give them sufficient notice of their termination nevertheless violated the federal and state WARN Acts. (Id. ¶¶ 70-71.) Plaintiffs allege that the offer from Broadridge "constituted entirely new and distinct employment with a new employer which offered substantially different and inferior benefits, working conditions, and job security." (Id. ¶ 65.) Plaintiffs further allege that some of them did not pass

2

Broadridge's pre-employment screening, which included a drug test and background check. (Id. ¶ 68.)

Defendants argue that no notice was required because "the transaction at issue fell under the sale of business exclusion under both federal WARN and New York WARN." (Def. Mot. at 2.) Defendants claim that Plaintiffs suffered only a technical termination, not a "covered employment loss," because Defendants sold BDS to Broadridge, and Plaintiffs were offered employment at Broadridge. (Def. Mem. (Docket Entry # 24) at 7-13.) Additionally, Defendants argue that the claims against Citigroup must be dismissed because Citigroup was not Plaintiffs' employer at the time of the alleged WARN violations. (Id. at 6-7.)

Plaintiffs oppose Defendants' Motion on the grounds that whether a "sale of a business" occurred constitutes a genuine issue of material fact that precludes Defendants' motion to dismiss. (Pl. Opp. (Docket Entry # 26) at 7.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (quoting Bell Atl. Corp. v. Twombly, 555 U.S. 544, 570 (2007)). The complaint must set forth factual allegations that are sufficient "to raise a right to relief above the speculative level." Twombly, 555 U.S. at 555.

In evaluating a motion to dismiss, a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns Inc. v. Shaar Fund. Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

### III. DISCUSSION

#### A. The Asset Purchase Agreement

Defendants' motion relies heavily on the terms of an Asset Purchase Agreement ("APA") between MSSB and Broadridge, which Defendants attach to their motion as Exhibit A. (Def. Mot. Exh. A.) Although Plaintiffs did not attach the APA to their Complaint or reference the APA by name in their Complaint, Defendants request that the court consider the document as if it were part of the Complaint. (Def. Mot. at 2-4.)

Under the Cortec doctrine, a court deciding a Rule 12(b)(6) motion may consider a document which is "integral" to the complaint, even if the plaintiff does not attach that document to the complaint:

> [W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.

Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)). "[W]here the complaint relies heavily upon [the document's] terms and effect . . . the document [is] 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). "[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary

4

prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Id. (emphasis in original).

Defendants argue that "the APA is 'integral' to Plaintiffs' Complaint because Plaintiffs allege that their employment was terminated in connection with the transaction between MSSB and Broadridge, which resulted in their employment being transferred to Broadridge." (Def. Mem. at 5.) Plaintiffs respond that "[t]he APA has nothing to do with plaintiffs' WARN allegations but rather is integral to defendants' proposed defense to liability." (Pl. Opp. at 6-7.)

Nothing in Plaintiffs' Complaint suggests that it "relies heavily upon [the APA's] terms and effects." See Chambers, 282 F.3d at 153. Nor is there any indication that Plaintiffs even had "notice or possession" of the APA at the time they drafted their Complaint. See id. Plaintiffs' only reference to the transaction between MSSB and Broadridge states, "Broadridge is an outsourcing company with which [MSSB] entered into a seven-year contract to provide [MSSB's] document production services." (Compl. ¶ 65.) Plaintiffs correctly assert that the APA is "integral" only to Defendants' defense that the statutory "sale of business" exclusion applies. Accordingly, the court will not consider the APA in resolving Defendants' motion to dismiss.

### B. Claims Against Citigroup

WARN liability is limited to "[a]ny employer who orders a plant closing or mass layoff" in violation of the Act. 29 U.S.C. § 2104(a)(1); see also N.Y. Labor Law § 860-b(1). The WARN Act defines an employer as "any business enterprise" that employs 100 or more employees. 29 U.S.C. § 2101(a).[1] Defendants argue that "the claims against Citi should be dismissed because Citi was not Plaintiffs' employer at the time of the alleged 'mass layoff'" in

---

[1] Under New York WARN, an employer is "any business enterprise that employs fifty or more employees." N.Y. Labor Law § 860-a.

5

October 2009. (Def. Mem. at 6.) There is no dispute that MSSB was Plaintiffs' employer during the relevant period; the question is only whether, because of Citigroup's ownership interest in MSSB, Citigroup was also their "employer."

The Department of Labor ("DOL") regulations regarding the WARN Act provide the following guidance with regard to a parent corporation's potential liability for the WARN violations of its subsidiaries:

> [I]ndependent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company *depending upon the degree of their independence from the parent*. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2) (emphasis added). The DOL test "emphasizes de facto control of the decision to effect a mass layoff of employees," in determining whether an employer's parent company can be held liable. Vogt v. Greenmarine Holding, LLC, 318 F. Supp. 2d 136, 141 (S.D.N.Y. 2004).

The Second Circuit has not ruled on what test governs whether a parent corporation or other related entity can be held liable as an "employer" under the WARN Act in cases such as this one.[2] But, at least two district courts in this Circuit have found that the five non-exclusive factors contained in the DOL regulations form the best test for

---

[2] The Second Circuit has established a test in the context of lender liability. In determining whether a *creditor* is an "employer" within the meaning of the WARN Act, the court in Coppola v. Bear Stearns & Co., Inc. asked "whether, at the time of plant closing, the creditor was in fact responsible for operating the business as a going concern rather than acting only to protect [its] security interest and preserve the business asset for liquidation or sale." 499 F.3d 144, 148 (2d Cir. 2007) (citations and internal quotations omitted). It held that "[o]nly when a lender becomes so entangled with its borrower that it has assumed responsibility for the overall management of the borrower's business will the degree of control necessary to support employer responsibility under WARN be achieved." Id. (citation and internal quotations omitted) (further noting that "[t]his test accords with traditional principles of lender liability," in which "an essential part of the inquiry is whether the creditor has joined in or assumed control of the borrower's business"). The Court of Appeals has not, however, addressed any case concerning WARN liability of a parent corporation or other related entity.

determining a parent company's WARN liability. Guippone v. BH S & B Holdings LLC, No. 09-CV-1029 (CM), 2010 WL 2077189, *3-4 (S.D.N.Y. May 18, 2010); Vogt, 318 F. Supp. 2d at 141.[3]

The court agrees that the DOL factors should guide its decision here, and finds that Plaintiffs have failed to allege facts that could plausibly establish that Citigroup was acting as their "employer" for WARN liability purposes. In fact, Plaintiffs' Complaint includes only one statement that suggests *any* relationship between MSSB and Citigroup: Plaintiffs state that "Morgan Stanley-Smith Barney is a joint venture between Citi and Morgan Stanley that was launched in June 2009 in which Citi is a 49% percent [sic] stakeholder." (Compl. ¶ 49.) Although this statement alone may satisfy the "common ownership" factor of the DOL test, it is insufficient to state a cause of action against Citi. "[I]t is well established that stock ownership alone is not grounds for holding a parent liable for its subsidiary's actions." Vogt, 318 F. Supp. 2d at 142 (citing United States v. Bestfoods, 524 U.S. 51, 61-62 (1998)). Plaintiffs have alleged no facts whatsoever that speak to the other factors of the DOL test. They do not allege that Citigroup and MSSB shared common directors or officers, that their personnel policies (such as hiring and firing policies) emanated from a common source, or that Citigroup controlled the day-to-day operations of MSSB. See id. at 142-43 (describing each of these factors). Nor does Citigroup's stock ownership satisfy the "de facto control" prong of this test. See id. at 143 (explaining that the de facto control factor "'is not intended to support liability based on a parent's exercise of control pursuant to ordinary incidents of stock ownership . . . The factor is

---

[3] Courts in other jurisdictions have applied a variety of different tests to determine whether related corporations can be held liable as "employers" for WARN purposes. See Pearson v. Component Technology Corp., 247 F.3d 471, 483-84 (3d Cir. 2001) (discussing various standards and applying the DOL test); see also Vogt v. Greenmarine Holding, LLC, 318 F. Supp. 2d 136, 140 (S.D.N.Y. 2004) (same). Some circuits apply the DOL five-factor test; among the other tests courts have applied are "an alter ego/veil piercing test, [or] the federal labor law 'integrated enterprise' test first developed by the National Labor Relations Board." Vogt, 318 F. Supp. 2d at 140. Neither party has made any argument about what standard the court should apply in the instant case.

7

appropriately utilized, however, if the parent . . . was the decisionmaker responsible for the employment practice giving rise to the litigation'") (quoting Pearson, 247 F.3d at 503-04).

In short, Plaintiffs allege that MSSB was their employer, that MSSB terminated them, and that MSSB made the business decision that resulted in their termination. (Compl. ¶¶ 63, 66, 69; see also Tr. of February 9, 2009 Pre-Motion Conference Hearing, attached as Exh. B to Def. Mem. at 5:21-6:1.) Plaintiffs make no such allegations with regard to Citigroup. Furthermore, at the Pre-Motion Conference held before this court on February 9, 2009, Plaintiffs' counsel conceded that MSSB was the "real employer who terminated these employees." (Tr. at 6:11-14.) Accordingly, Plaintiffs have failed to make allegations that Citigroup "*ordered* a plant closing or mass layoff," 29 U.S.C. § 2104(a)(1) (emphasis added), which rise "above the speculative level," see Iqbal, 129 S. Ct. at 1954. Exploratory discovery on this issue is therefore improper. Id. (Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").[4]

---

[4] For these same reasons, dismissal of Plaintiffs' state WARN claim against Citigroup is also appropriate. The New York WARN Act became effective on February 1, 2009 and, to date, no court has spoken on the standard for parent liability under New York WARN. The traditional state law test for piercing the corporate veil is significantly more demanding than the five-factor DOL test described above. See generally In re Alstom SA Securities, 454 F. Supp. 2d. 187 (S.D.N.Y. 2006) (stating that, under New York law, courts consider the following factors in determining whether a parent exercised sufficient control or domination to justify piercing the corporate veil: the absence of corporate formalities; inadequate capitalization; the "overlap in ownership, officers, directors and personnel;" "common office space, address and telephone numbers;" the amount of discretion exercised by the dominated corporation; and, whether dealings between the two corporations are at "arms length"); see also Pearson, 247 F.3d at 485 (characterizing traditional veil piercing standards as "notoriously difficult for plaintiffs to meet").
The court need not resolve which test applies to Plaintiffs' state WARN claim, since Plaintiffs' claim against Citi fails under either test.

C.  **Claims Against MSSB**

1.  The WARN Act[5]

The WARN Act requires employers with 100 or more full-time employees to give affected employees or their representatives sixty days' notice before a "mass layoff" or "plant closing."[6] 29 U.S.C. § 2102(a); see also N.Y. Labor Law §§ 860-a(3), 860-b(1) (requiring employers with fifty or more employees to provide notice). The Act defines a "plant closing" as the "permanent or temporary shutdown of a single site of employment" that causes an "employment loss" for fifty or more employees during any thirty-day period. 29 U.S.C. § 2101(a)(2); see also N.Y. Labor Law § 860-a(6) (same for twenty-five or more employees). A "mass layoff" is a reduction in force that is not the result of a plant closing and that results in an employment loss at a single site of employment during any thirty-day period for (a) at least thirty-three percent of the employees and at least fifty full-time employees, or (b) at least 500 employees. 29 U.S.C. § 2101(a)(3); see also N.Y. Labor Law § 860-a(4).[7] The statute defines "employment loss" as: "A) an employment termination other than a discharge for cause, voluntary departure, or retirement, B) a layoff exceeding 6 months, or C) a reduction in hours of

---

[5] Plaintiffs bring claims under both the federal and state WARN Acts. The New York WARN Act parallels the federal Act, but requires employers to provide ninety rather than sixty days' notice to employees. See N.Y. Labor Law § 860-b(1). Although only the terms of the federal Act are discussed here, the court's analysis also applies to Plaintiffs' state law claims. Except where otherwise noted, the terms of the relevant provisions are substantially similar.

[6] The purpose of the notice requirement is to provide "workers and their families some transition time to adjust to the prospective loss of employment, to seek to obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a). Employers who fail to provide the requisite notice incur liability in the amount of sixty days' pay and fringe benefits to each affected employee. 29 U.S.C. § 2104(a); see also N.Y. Labor Law § 860-g (describing state law liability).

[7] Under New York WARN a "mass layoff" must affect (a) at least thirty-three percent of the employees and at least twenty-five full-time employees, or (b) at least 250 employees. N.Y. Labor Law § 860-a(4).

9

work of more than 50 percent during each month of any 6-month period." 29 U.S.C. § 2101(a)(6); see also N.Y. Labor Law § 860-a(2).[8]

### 2. Application to MSSB

Here, the parties agree that MSSB was a covered employer that was required to give WARN notice in advance of a plant closing or mass layoff that resulted in employment loss. Plaintiffs allege that: (1) MSSB was Plaintiffs' employer until October 12, 2009; (2) MSSB made a business decision to discontinue internal document production services through BDS; (3) MSSB terminated approximately 179 employees as a result of this decision; (4) these employees comprised approximately 88% of the workforce; and (5) affected employees were not given sixty days' advance notice of their termination. (Compl. ¶¶ 1, 54, 63-66.)

Defendants do not contest any of these facts. Rather, Defendants argue that MSSB was excused from providing WARN notice in accordance with the statutory "sale of business" exclusion. (Def. Mem. at 7-13.) The WARN Act excludes the sale of all or part of an employer's business from the definition of "employment loss," as follows:

> In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff in accordance with section 2102 of this title, up to and including the effective date of the sale. After the effective date of the sale of part or all of an employer's business, the purchaser shall be responsible for providing notice for any plant closing or mass layoff in accordance with section 2102 of this title. Notwithstanding any other provision of this chapter, *any person who is an employee of the seller . . . as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale.*

29 U.S.C. § 2101(b)(1) (emphasis added); see also N.Y. Labor Law § 860-b(5). The accompanying regulation explains:

> This provision preserves the notice rights of the employees of a business that has been sold, but creates no other employment rights. *Although a technical*

---

[8] New York WARN also includes "relocation" as a triggering event, but that provision is not at issue here. N.Y. Labor Law § 860-a(2).

> *termination of the seller's employees may be deemed to have occurred when a sale becomes effective, WARN notice is only required where the employees, in fact, experience a covered employment loss.*

20 C.F.R. § 639.6 (emphasis added). In other words, the fact that employees are *technically* terminated insofar as the seller is no longer their employer as of the date of sale is not sufficient to trigger WARN liability.

Relying on the terms and effects of the APA (which, as discussed above, the court will not consider here), Defendants argue that because the transaction between MSSB and Broadridge was a "sale of business," and because Plaintiffs had an opportunity to transfer to work for Broadridge as of the date of sale, Plaintiffs suffered no employment loss within the meaning of the Act. (Def. Mem. at 7-16.) Plaintiffs contest that no "sale of business" occurred, and that the fact that many Plaintiffs "had the good fortune of finding new employment" at Broadridge does not excuse MSSB's failure to give them notice. (Pl. Opp. 6, n.2.) Although Plaintiffs' arguments as to what types of transactions may be construed as "sales" for WARN purposes bear a tenuous relation to the relevant caselaw at best, Plaintiffs do correctly note that it would be quite unusual to decide whether a sale of business has occurred on the pleadings alone. (See Pl. Opp. at 7.) Only one of the cases on which Defendants rely resolved the issue of whether WARN's "sale of business" exclusion applied on a motion to dismiss. (Def. Reply (docket Entry # 28) at 8; Def. Mem. at 9-14.) In that case, Patterson v. O'Neal, 673 F. Supp. 2d 974 (N.D. Cal. 2009), former employees of a law firm brought WARN claims against their former employer and against five other law firms that they alleged had bought parts of their employer's former practice. In dismissing the claims against the alleged "buyers," the court found that Plaintiffs had failed to plead facts (such as the number of partners or employees who were transferred to the buyers' firms or whether any assets had changed hands) that would indicate

11

that a sale had occurred. Id. at 977. As the court in Patterson acknowledged, in the more typical case, "[w]here the facts or pleadings indicate that a transaction . . . constituted a transfer of business as a going concern, there will be a question of fact as to whether a 'sale' has occurred." Id. Patterson differs significantly from the case at hand. First, the plaintiffs in that case were required to plead facts that suggested a sale had occurred in order to state a right to relief against the defendant *buyers*. Because Plaintiffs here bring claims against their former employer, not against Broadridge, they face no comparable requirement. Second, the court in Patterson found as a matter of law that *no* sale had occurred. Defendant has cited no case, and the court is aware of none, in which a court has found as a matter of law that a sale *has* occurred. The court declines to do so here.

Examination of the APA and any other relevant contracts will likely resolve this issue. But, because the court may not properly consider these extrinsic documents at this stage and because Defendants' argument seems to be premised entirely on the APA, to find as a matter of law that a "sale of business" has occurred would be speculative, or at the least premature. In order to state a cause of action, Plaintiffs need not plead that *no* sale of business has occurred. Plaintiffs must only allege facts that state a plausible claim for relief. They have done so here and, accordingly, have met the low bar for proceeding beyond this stage of the litigation.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is GRANTED as to Citigroup and DENIED as to MSSB. Under the supervision of Magistrate Judge Joan M. Azrack, parties may conduct discovery on the limited issue of whether a sale of business occurred. If, at the conclusion of that discovery, Defendants wish to file a motion for summary


judgment, they may request a pre-motion conference, and the court will set a briefing schedule.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2010

s/Nicholas G. Garaufis
_____
NICHOLAS G. GARAUFIS
United States District Judge